IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP KIMBRO, | ) | CASE NO. 1:18-cv-01448 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Phillip Kimbro ("Plaintiff" or "Kimbro") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for social security disability benefits. Doc. 2. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 11. For the reasons explained herein, the Court **AFFIRMS** the Commissioner's decision.

## I. Procedural History

On June 16, 2015, Kimbro protectively filed[1] an application for supplemental security income ("SSI"). Tr. 15, 59, 81, 164. Kimbro alleged disability beginning on May 1, 2015. Tr. 15, 59, 164, 186. He alleged disability due to back and hand injury, depression, high blood pressure, chronic back pain, glaucoma, migraines, and cataracts. Tr. 59, 107, 118, 191. After initial denial by the state agency (Tr. 106-114) and denial upon reconsideration (Tr. 118-122),

---

[1] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application." http://www.socialsecurity.gov/agency/glossary/ (last visited 9/11/2019).

1

Kimbro requested a hearing (Tr. 123-125). On April 3, 2017, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 40-58. On July 27, 2017, the ALJ issued an unfavorable decision, (Tr. 12-36), finding that Kimbro had not been under a disability within the meaning of the Social Security Act since June 16, 2015, the date the application was filed (Tr. 16, 31). Kimbro requested review of the ALJ's decision by the Appeals Council. Tr. 161-163. On April 24, 2018, the Appeals Council denied Kimbro' request for review, making the ALJ's July 27, 2017, decision the final decision of the Commissioner. Tr. 1-6.

## II. Evidence[2]

### A.  Personal, vocational and educational evidence

Kimbro was born in 1963. Tr. 29, 164. Kimbro has a high school education and completed two years of college online. Tr. 43. According to Kimbro, he received an associate's degree but the college was fake so his degree meant nothing. Tr. 43. Kimbro has past work as a stocker and working on an assembly line as a stacker. Tr. 43. He worked in 2014 doing various odd jobs. Tr. 45.

### B.  Medical evidence

During a February 13, 2015, visit with his primary care providers at Lorain County Health & Dentistry (Tr. 249-253) regarding his hypertension, Kimbro's review of system was positive for feeling down, depressed or hopeless (more than half the days) and little interest or pleasure in doing things (nearly every day) but negative for anxiety and depression. Tr. 251. Kimbro's psychiatric examination during that visit was normal – he was observed to be oriented to time, place, person and situation; he had an appropriate mood and affect; and he had normal

---

[2] Kimbro's appeal does not relate to his alleged physical impairments. Doc. 12. Thus, the evidence summarized herein is focused on his alleged mental impairments.

insight and judgment. Tr. 252. There were no specific treatment recommendations or medications prescribed for mental health related impairments.

On April 6, 2015, Kimbro retuned to see his primary care providers for back pain. Tr. 244-247. During the visit, Kimbro's review of systems was negative for anxiety, depression, feeling down, depressed, or hopeless and little interest or pleasure in doing things. Tr. 246. On examination, Kimbro was observed to have an appropriate mood and affect and his insight and judgment were normal. Tr. 247.

In May 2015, Kimbro started seeing providers at Mercy Medical Partners. Tr. 330-332. He complained of back pain and a cyst on his right hand that was causing him pain. Tr. 330. Kimbro's psychiatric examination showed normal mood and affect and normal speech and behavior. Tr. 331. At follow-up visits at Mercy Medical Partners during 2015, Kimbro continued to complain of physical impairments. *See e.g.* Tr. 320-324, 326-330, 372-373, 398-401. Psychiatric examinations were normal during these visits. *See e.g.* Tr. 324, 327, 329, 373, 399.

On September 25, 2015, Kimbro underwent a consultative psychological examination at Career Center Development Center, Inc. Tr. 363-369. The completed report identifies Joan Williams, Ph.D., as the chief psychologist (Tr. 363) but the report is signed by psychologist Charles Loomis (Tr. 369). Kimbro relayed that his main barriers to employment were pain in his neck, back and hands. Tr. 364. Kimbro reported being imprisoned on multiple occasions. Tr. 364. Most of Kimbro's jobs had been odd jobs and Kimbro noted that he had not been able to get hired because of his prison record. Tr. 365. Kimbro relayed that, when he did work, he did not really trust his coworkers or supervisors. Tr. 365. Kimbro got along okay with his neighbors but when out at the store he did not talk a lot. Tr. 365. Kimbro noted that, if he did not have to,

he would not leave his house. Tr. 365. Kimbro relayed that he had no inpatient mental health treatment. Tr. 365. He noted he was seen once at The Nord Center for an assessment but did not care for the examiner. Tr. 365. Kimbro reported no use of psychotropic medications. Tr. 365. Kimbro reported engaging in limited activities of daily living. Tr. 365-366. A friend had driven Kimbro to the examination. Tr. 366. Kimbro's license had been expired since 1994 so he did not drive. Tr. 365-366.

During the examination, Kimbro was cooperative and appropriate in his interactions with Dr. Loomis but his attentional pace and persistence were below average. Tr. 366. Kimbro's speech was clear and understandable; at times he had to be refocused; his thought processes appeared logical, coherent, and organized; his affect was constricted and he exhibited a reserved mood; he denied thoughts of suicide or homicide; he reported low energy but there was no indication of mood swings; motor manifestations of anxiety were absent but Kimbro noted some autonomic symptoms, e.g., heart palpations, night sweats, chest discomfort, and some dizziness and numbness in his left hand; Kimbro described some intrusive thoughts, e.g., flashbacks to being shot in 2008, and he had some concerns that someone might invade his home; Kimbro's reality was adequately maintained but he did appear to have some trust issues; Kimbro's functional intelligence was estimated to be in the borderline range; his insight and judgment appeared adequate and he appeared to be able to manage his daily activities and living arrangements. Tr. 366-367. Dr. Loomis' diagnostic impression was depressive disorder, unspecified; antisocial personality; cocaine use disorder in reported remission; and alcohol use disorder. Tr. 368. In his summary and conclusion section, Dr. Loomis indicated that Kimbro did present with a few symptoms of depression but Kimbro had no history of difficulties with work due to emotional problems and, while Kimbro reported being uncomfortable away from home

4

and fearing a home invasion, Kimbro had no history of mental health care. Tr. 368. Dr. Loomis opined that Kimbro did not appear significantly impaired in his ability to understand, remember and follow routine instructions; Kimbro's ability to maintain attention and concentration was below average, his immediate and delayed memory functions were below average, and his attentional pace and persistence during the interview was below average but Kimbro appeared to be able to perform simple, closely supervised tasks; and Kimbro's ability to cope with ordinary stressors and pressures of competitive work did not appear to be significantly limited by mental health issues. Tr. 368-369.

During a physical consultative examination on October 17, 2015, (Tr. 379-387), Kimbro was alert; he had appropriate eye contact, speech and mood; and his memory and concentration were normal (Tr. 381). The examiner noted that Kimbro was a pleasant man and it was noted that Kimbro was able to perform his activities of daily living without difficulty. Tr. 383.

On October 13, 2015, state agency reviewing psychologist Paul Tangeman, Ph.D., completed a Psychiatric Review Technique ("PRT") (Tr. 69-70) and Mental RFC Assessment (75-77). In the PRT, Dr. Tangeman found mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration. Tr. 70. In the Mental RFC Assessment, Dr. Tangeman found that Kimbro reported issues with his memory and concentration but found that Kimbro retained the ability to carry out simple, 1-2 step and occasional 3-4 step tasks with some supervision and in a routine work setting. Tr. 75-76. Dr. Tangeman also found that Kimbro indicated he did get along with people but would rather keep to himself. Tr. 77. Dr. Tangeman noted that during examination, Kimbro was polite and cooperative with the examiner but he had a constricted affect and reserved mood. Tt. 77.

5

Dr. Tangeman found only mild limitations in the area of social interaction. Tr. 77. Dr. Tangeman also found only mild limitations in the area of adaptation. Tr. 77. As additional explanation for his RFC findings, Dr. Tangeman stated that Kimbro had a diagnosis of alcohol abuse and cocaine abuse in reported remission; Kimbro reported that his primary barriers to work were his physical conditions; Kimbro had no ongoing or past psychological treatment; and Kimbro did not take medication for his mental health. Tr. 77.

Upon reconsideration, on January 5, 2016, state agency reviewing psychologist Todd Finnerty, Psy.D., completed a PRT (Tr. 90-91) and Mental RFC Assessment (Tr. 96-98). In the PRT, Dr. Finnerty found Kimbro had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration. Tr. 90. In the Mental RFC, Dr. Finnerty found that Kimbro reported memory and concentration issues but found that Kimbro retained the ability to carry out simple tasks. Tr. 96-97. In the area of social interaction, Dr. Finnerty found that Kimbro could interact with others superficially. Tr. 97-98. In the area of adaptation, Dr. Finnerty found that Kimbro could adapt to a static setting without frequent changes. Tr. 98. Although Dr. Finnerty's RFC assessment was slightly different than Dr. Tangeman, as additional explanation for his RFC findings, like Dr. Tangeman, Dr. Finnerty stated that Kimbro had a diagnosis of alcohol abuse and cocaine abuse in reported remission; Kimbro reported that his primary barriers to work were his physical conditions; Kimbro had no ongoing or past psychological treatment; and Kimbro did not take medication for his mental health. Tr. 98.

On October 25, 2016, Kimbro was seen again at Lorain County Health & Dentistry. Tr. 416-417. The treatment notes from that visit indicate that a health questionnaire (PHQ-9)

showed moderately severe depression. Tr. 416. Kimbro stated he was fine and refused any behavioral health intervention. Tr. 416.

During a January 5, 2017, emergency room visit for back pain (Tr. 444-448), there were no reports of psychiatric/behavioral issues (Tr. 444), and, on physical examination, Kimbro exhibited a normal mood and affect and normal judgment (Tr. 447). During a January 13, 2017, office visit at the Cleveland Clinic for evaluation of shoulder pain (Tr. 516-520), Kimbro exhibited an appropriate mood and affect (Tr. 518).

**C.     Testimonial evidence**

**1.     Plaintiff's testimony**

Kimbro was represented and testified at the hearing. Tr. 42-54. A friend drove Kimbro to the hearing. Tr. 53. When asked what happened on May 1, 2015, the alleged onset date, Kimbro indicated that his whole body just start getting worse. Tr. 43-44. He started to have extreme pain in his back, his knee was hurting from there being a bullet in it, he had problems with his hands shaking, and he had numbness in his neck and shoulders. Tr. 44. During an average day, Kimbro reported not doing much of anything. Tr. 44,

**2.     Vocational Expert**

Vocational Expert ("VE") Eric Dennison testified at the hearing. Tr. 54-57. The VE described Kimbro's past work, which included work as (1) an assembler, production, an unskilled, light job; (2) stacker, a semi-skilled, heavy job; and (3) stock clerk, a semi-skilled, heavy job. Tr. 55. The ALJ asked the VE to consider the following hypothetical person – a male, 53 years of age, with a high school education plus some college who can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk six out of sight hours; sit six out of eight hours; frequently use a ramp or stairs; never use a ladder, rope or scaffold; can constantly

7

balance; can frequently stoop, kneel, crouch, and crawl; can frequently reach overhead with the left upper extremity and constantly with the right; reaching in all other planes is constant; can frequently handle bilaterally; can constantly finger and feel; has no vision out of the left eye but can see out of the right eye; no limits on speaking and hearing; should avoid dangerous machinery and unprotected heights; should not drive commercially; and should not perform any jobs that require binocular vision. Tr. 55-56. The VE indicated that two of the three past jobs would not be available because they require heavy exertional work. Tr. 56. The one position, assembler, production, would be able to be performed by the hypothetical individual. Tr. 56. The ALJ asked the VE there would there be any other jobs that the hypothetical individual could perform if there was no past work available. Tr. 56. The VE indicated that the following positions would be available: (1) recreation aide, an unskilled, light job; (2) mail clerk, non-governmental, an unskilled, light job; and (3) information clerk, an unskilled, light job. Tr. 56-57. The VE provided national job incidence data for each of the identified jobs. Tr. 56-57.

Kimbro's counsel asked the VE two questions – one question related to whether use of a cane for ambulation would affect the described individual's ability to perform the jobs and, the other question related to whether being off-task due to pain for 15% of the workday would affect the described individual's ability to perform the jobs identified. Tr. 57-58. The VE indicated that use of a cane for ambulation would not affect the jobs identified. Tr. 57. However, the VE indicated that being off-task for greater than 10% of a workday day would be work-preclusive. Tr. 57.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial

8

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[3] . . . .

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[4] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the

---

[3] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

[4] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 416.925.

national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his July 27, 2017, decision, the ALJ made the following findings:[5]

1. Kimbro has not engaged in substantial gainful activity since June 16, 2015, the application date. Tr. 17.

2. Kimbro has the following severe impairments: osteoarthritis and allied disorder, disorder of the back (discogenic and degenerative), and contraction of visual field. Tr. 17-18. Kimbro's mental impairments of affective disorder and personality disorder were non-severe. Tr. 17-18.

3. Kimbro does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 19-20.

4. Kimbro has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except he can lift/carry 20 pounds occasionally and 10 pounds frequently, can stand and walk 6 out of 8 hours, and can sit 6 out of 8 hours; he can frequently use a ramp or stairs, never a ladder, rope, or a scaffold; he can constantly balance, and frequently kneel, stoop, crouch and crawl; he has manipulative limitations as follows: overhead with the left upper extremity is frequent, constant with the right; reaching in all other planes is constant; handling is frequent bilaterally; and fingering and feeling is constant; he has no vision out of the left eye but can see out of the right eye; he has no limits on speaking or hearing; he should avoid dangerous machinery and unprotected heights; he should not drive commercially nor should he do any jobs that require binocular vision. Tr. 20-29.

5. Kimbro is unable to perform past relevant work. Tr. 29.

---

[5] The ALJ's findings are summarized.

6. Kimbro was born in 1963 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. Tr. 29.

7. Kimbro has at least a high school education and is able to communicate in English. Tr. 29.

8. Transferability of job skills is not material to the determination of disability. Tr. 29.

9. Considering Kimbro age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Kimbro can perform, including recreation aide, mail clerk, and information clerk. Tr. 30.

Based on the foregoing, the ALJ determined that Kimbro had not been under a disability, as defined in the Social Security Act, since June 16, 2015, the date the application was filed. Tr. 31.

## V. Plaintiff's Arguments

Kimbro argues that the decision is not supported by substantial evidence because the VE hypothetical question did not include mental limitations. Doc. 12, pp. 6-7.

## VI. Law & Analysis

### A. Standard of review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.  Reversal and remand is not warranted**

Kimbro argues that the ALJ's decision is not supported by substantial evidence because, although the ALJ found that Kimbro had mild limitations in three functional areas – understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace – the ALJ did not include any mental limitations in the VE hypothetical upon which the ALJ relied. Kimbro contends that, since the VE did not consider the mild mental limitations, it is not possible to know whether the jobs identified by the VE would be available to the individual with such limitations. Kimbro also argues that, even though the ALJ found his mental impairments to be non-severe, the ALJ was required to include Kimbro's mental impairments in the VE hypothetical.

Here, when assessing whether or not Kimbro's mental impairments were severe, the ALJ considered Kimbro's treatment history, medical findings, and opinion evidence pertaining to his alleged mental health impairments. Tr. 17-19. The ALJ explained:

> The claimant alleges disability in part due to depression, and to his credit, primary care treatment records indicate occasional reports of depression (Exhibit 2E; 1F:7-11; 13F:2-3). However, the claimant has declined formal mental health treatment (Exhibit 13F:2-3), and he has consistently demonstrated normal mental status on examination (Exhibit 1F, 5F, 7F, 8F, 9F, 10F, 13F, 15F, 18F). A September 25, 2015 consultative evaluation with Joan Williams, Ph.D.,[6] yielded diagnoses of depressive disorder unspecified, antisocial personality disorder, cocaine use disorder in reported remission, and alcohol use disorder (Exhibit 6F). However, mental status examination was largely unremarkable, revealing a reserved mood, constricted affect, below average attention, persistence, pace, and concentration, and borderline estimated intelligence, but cooperative demeanor, intact hygiene and eye contact, normal orientation, speech, motor, and thought processes, and adequate insight and judgment (Id.).
>
> As noted above, despite the claimant's diagnoses, he has not obtained mental health treatment. Given the lack of sustained, grossly abnormal mental status findings, and the lack of formalized behavioral health treatment, such as evaluation by a psychiatrist, participation in psychotherapy, or use of psychotropic medication administered by a primary care provider, I find the claimant's mental impairments do not have a discernible effect on his ability to engage in basic work activities and are therefore non-severe.

Tr. 18.

Additionally, when assessing whether Kimbro's mental impairments were severe or not, the ALJ considered each of the four broad functional areas and concluded that Kimbro had no more than mild limitations in three functional areas – understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace – and no limitation in adapting or managing oneself. Tr. 18-19. Where a "claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, 'unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities.'" *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 2007 WL 444808, * 3 (6th Cir. Feb. 9, 2007) (citing 20 C.F.R. § 404.1520a(d)).

---

[6] As indicated previously, the September 25, 2015, consultative evaluation is signed by psychologist Charles W. Loomis. Tr. 369.

Kimbro does not contend the ALJ's reasoning is unsupported by substantial evidence or that the evidence shows that his mental impairments cause more than a minimal limitation in his ability to perform basic work activities. Instead, he argues that the ALJ was required to consider both the severe and non-severe impairments in subsequent steps of the evaluation and include mental limitations in the VE hypothetical because the ALJ found mild mental limitations. However, the ALJ's thorough explanation for why he concluded that Kimbro's mental health impairments were non-severe and caused no more than mild limitations allows this Court the ability to review and determine whether the ALJ's decision not to include mental health limitations in the RFC and corresponding VE hypothetical is supported by substantial evidence. Doing so, the Court finds that the ALJ's decision is supported by substantial evidence. As explained by the ALJ, the record shows a lack of mental health treatment, including no use of psychotropic medication. Tr. 18. Further, to the extent that mental status examination findings are documented in the record, as explained by the ALJ, there is a lack of sustained, grossly abnormal findings. Tr. 18. Kimbro has not shown these findings to be unsupported by the record.

In a conclusory manner, Kimbro contends that the ALJ relied on his own assessment rather than the assessments of the examining and non-examining psychologists. Doc. 12, p. 6. The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all the relevant evidence in your case record." 20 C.F.R. §§ § 416.945(a)(3), 416.946(c). The ALJ, not a physician, is responsible for assessing a claimant's RFC. *See* 20 C.F.R. § 416.945(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. Aug. 18, 2009). Further, when assessing a claimant's RFC, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical

evidence before rendering a residual functional capacity finding." *Id.* Here, consistent with the regulations, the ALJ considered and weighed the opinions of the examining and non-examining psychologists but found that they were entitled to little weight because they were "inconsistent with the record as whole, which indicates only occasional psychiatric abnormalities on consultative examination, with no abnormal mental status findings during physical examinations, and no mental health treatment . . . [and] ][b]ecause the evidence of record confirms non-severe mental impairment, with no associated functional limitations[.]" Tr. 18. Considering the foregoing, the Court finds that Kimbro has not shown error with respect to the ALJ's consideration of or weighing of the medical opinion evidence.

Additionally, the Court finds no merit to Kimbro's argument that an ALJ is required to include mental limitations in the RFC where a claimant is found to have no more than mild limitations. Similar arguments have been considered and rejected. One court has stated: "An ALJ's determination that a claimant has only mild mental limitations does not require inclusion of mental limitations in the RFC or, therefore, in the hypothetical questions to the VE." *James v. Comm'r of Soc. Sec.*, 2019 WL 487191, * 6 (N.D. Ohio Jan. 14, 2019) (citing cases within the Sixth Circuit), *report and recommendation adopted*, 2019 WL 481751 (N.D. Ohio Feb. 6, 2019); *see also Spoor Park v. Comm'r of Soc. Sec.*, 2018 WL 3093624, ** 20-21, (N.D. Ohio June 22, 2018) (finding substantial evidence supported ALJ's finding that depression was not a severe impairment and recognizing cases that have rejected claims that an ALJ is required to include mental limitations in an RFC when an ALJ finds mild mental limitations); *see also Griffith v. Comm'r of Soc. Sec.*, 582 Fed. Appx. 555, 565 (6th Cir. Aug. 7, 2014) (ALJ not required to refer to non-severe impairment in hypothetical question to VE). Kimbro has not pointed to evidence demonstrating that the ALJ should have found greater limitations in his mental abilities. And,

15

even if he could show evidence to support greater limitations in his mental abilities, this Court cannot overturn the Commissioner's decision because, as explained above, the ALJ's decision is supported by substantial evidence. *See Jones*, 336 F.3d at 477 (Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ.").

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) and *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Here, the ALJ did not find that mental limitations were supported by the record or credible. As discussed, Kimbro has not shown error with respect to the ALJ's consideration of and weighing of the evidence relating to his alleged mental health impairments. And he has not demonstrated error based on the ALJ's decision not to include mental limitations in the RFC or in the VE hypothetical question upon which he relied. Accordingly, the ALJ did not err in relying on the VE's testimony which was provided in response to a hypothetical question that included limitations that the ALJ found credible and supported by the record.

## VII. Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.

Dated: September 11, 2019
                                           */s/ Kathleen B. Burke*
                                           Kathleen B. Burke
                                           United States Magistrate Judge